UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAHLEN DWAYNE MONROE-HINDS,

Plaintiff,

v.

MICHAEL BURGESS et al.,

Defendants.

Case No. 1:26-cv-583

Honorable Ray Kent

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's "Request of Motion for Guidance." (ECF No. 7.)

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF staff: Warden Michael Burgess, Grievance Coordinator T. Bassette, Sergeant Unknown Mitchell, Lieutenant Unknown Baker, Resident Unit

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Manager Unknown Turner, and Assistant Deputy Warden Unknown Erway. (Compl., ECF No. 1, PageID.2–3.)

In Plaintiff's complaint,[2] he alleges that he arrived at ECF on October 21, 2025, and was taken to segregation. (*Id.*, PageID.4.) Plaintiff alleges that when he arrived at his cell, he noticed that the windows had been "sealed closed," the room was "unsanitary/uncleanly kept," and that there were "no alternatives for fresh air, or for individuals with heat related illness (which also includes any individual with a mental illness)."[3] (*Id.*) Plaintiff also alleges that the toilet was "caked up with feces." (*Id.*) According to Plaintiff, at an unspecified time, he contracted "food sickness" because he was provided his food in this area. (*Id.*) On October 21, 2025, Plaintiff asked to talk to "shift command" and was told by nonparty Officer Unknown Diaz that "they would not be in until tomorrow." (*Id.*) The next day, October 22, 2025, Plaintiff talked to Defendants Mitchell, Baker, and Turner "about having been placed in a cell that was filled with bacterial pollution on the walls, floor, and in the air." (*Id.*) At an unspecified time, Plaintiff "brought it up to" Defendants Erway and Burgess, and they responded, "Oh well we don't have the money to fix those issues." (*Id.*)

During the time that Plaintiff was in this cell, Plaintiff alleges that he was "never given any cleaning solutions," and that "despite [his] complaints, [he] was told to write a grievance." (*Id.*) Further, Plaintiff alleges that "after [he] inform[ed] of the conditions, staff, warden(s), and ADW(s) deliberately ignored such conditions in which [Plaintiff] then became physically ill." (*Id.*)

---

[2] In addition to his complaint, Plaintiff submitted three letters to the Court describing events unrelated to the events in Plaintiff's complaint. (ECF Nos. 4, 5, 6.) To the extent that Plaintiff wishes to bring new claims based on the allegations in these letters, he is free to do so in a new action.

[3] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

Additionally, Plaintiff filed a grievance on an unspecified date. (*Id.*) On January 7, 2026, Defendant Bassette denied Plaintiff's grievance because it was "vague" and "this is a facility wide issue." (*Id.*) Shortly after Plaintiff's grievance was denied, he was placed on "modified access." (*Id.*) Plaintiff alleges that this placement on modified access prevented him from filing another grievance for 90 days and prohibited him from appealing his grievance. (*Id.*)

Based on the foregoing allegations, Plaintiff brings Eighth Amendment conditions of confinement claims, Fourteenth Amendment Procedural Due Process Clause claims, and Fourteenth Amendment Equal Protection Clause claims. Plaintiff seeks injunctive relief and monetary damages.

## II. "Request of Motion for Guidance"

Plaintiff filed a "Request of Motion for Guidance," in which he stated that he had not yet received a response from the Court regarding his complaint and that he had been transferred three times since filing the complaint. (ECF No. 7.) Plaintiff also expressed his desire for sufficient time to respond to any defense motions and to have a "speedy mediation date[.]" (*Id.*) Because this opinion, and the corresponding judgment, dismiss Plaintiff's complaint, Plaintiff's request for sufficient time to response to any defense motions and to have a "speedy mediation date" are rendered moot. Therefore, the Court will deny this motion.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Eighth Amendment Conditions of Confinement Claims**

Plaintiff alleges that on October 21, 2025, he was placed in a cell that was "unsanitary/uncleanly kept," that was "filled with bacterial pollution on the walls, floor, and in the air," and that the "toilet was caked up with feces." (Compl., ECF No. 1, PageID.4.) Plaintiff also alleges that the windows were sealed shut and there were "no alternatives for fresh air." (*Id.*) Plaintiff contends that he had to eat his meals in the cell, which caused him to "develop[] food

sickness." (*Id.*) Plaintiff claims that the unsanitary conditions of his cell violated the Eighth Amendment. (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference

standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show “that he is incarcerated under conditions posing a substantial risk of serious harm.” *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must “know[] of and disregard[] an excessive risk to inmate health or safety.” *Id.* at 837. “[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.” *Id.* at 842. “It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.” *Id.* at 836. “[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.” *Id.* at 844.

**1. Claims Against Defendants Mitchell, Baker, and Turner**

As an initial matter, although Plaintiff specifically identifies Defendants Mitchell, Baker, and Turner as the individuals to whom he complained on October 22, 2025, Plaintiff does not allege how these Defendants responded to Plaintiff’s complaints. (*See* Compl., ECF No. 1, PageID.4.) Instead, Plaintiff alleges generally that while he was detained in the cell in question, he “was never given any cleaning solutions” and that he “was told to write a grievance”; however, Plaintiff’s allegations do not indicate which individuals, let alone Defendants, were involved in not providing him cleaning supplies and telling him to write a grievance. Under these circumstances, Plaintiff’s allegation that he complained to Defendants Mitchell, Baker, and Turner on October 22, 2025, without any allegations about how these Defendants responded, is insufficient to show that these Defendants acted with deliberate indifference.

Furthermore, Plaintiff’s allegations indicate only that he was in the cell in question on October 21, 2025, and October 22, 2025. (*Id.*) Plaintiff alleges that he later received a response to his grievance about the matter on January 7, 2026, but Plaintiff does not allege that he was detained

in the cell in question for this entire period. (*See id.*) Instead, Plaintiff only references being detained in this cell on October 21, 2025, and October 22, 2025, at most a two day period. (*See id.*)

Although Plaintiff alleges that his toilet was "caked up with feces" while he was in the cell in question, Plaintiff does not allege that the toilet itself did not work, nor does he allege that the feces was anywhere besides in the toilet. The Court does not minimize Plaintiff's experience; however, Plaintiff's limited allegations, without additional supporting facts, are insufficient to state an Eighth Amendment claim. *See Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021) ("It is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." (emphasis in original)); *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) (concluding that an inmate's four-hour exposure to human waste due to flooded toilet water was insufficient to state an Eighth Amendment violation). *But see Taylor v. Riojas*, 592 U.S. 7, 7 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment).

Additionally, Plaintiff's allegation that the cell was "filled with bacterial pollution," without any supporting factual allegations or explanation, is insufficient to state a claim. Plaintiff alleges that the "bacterial pollution" was "on the walls, floor, and in the air," suggesting that this was a separate issue from the feces in the toilet. This vague allegation does not include sufficient information about the nature of this "bacterial pollution" and how it posed a substantial risk of serious harm to Plaintiff. Moreover, Plaintiff's allegation that the cell was "unsanitary/uncleanly

kept" is wholly conclusory and is not, by itself, sufficient to state an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff also alleges that the windows of his cell were sealed shut, and that there were "no alternatives for fresh air, or for individuals with heat related illness (which also includes any individual with a mental illness)." (Compl., ECF No. 1, PageID.4.) Plaintiff does not identify the serious harm that the closed windows could cause, and Plaintiff alleges no facts to suggest that the closed window posed a substantial risk of serious harm. Plaintiff refers to "individuals with heat related illness (which also includes any individual with a mental illness)," but does not allege any facts to show how the closed windows posed a substantial risk of serious harm to prisoners with heat-related illness or a mental illness. (*See id.*) For example, Plaintiff alleges no facts regarding the temperature in the cell that might indicate that the closed window posed a risk of heat-related harm, and the mere allegation that the windows were sealed shut is insufficient to show that Plaintiff was at substantial risk of serious harm from any heat related illness. To the extent that the closed windows made the cell unpleasant, Plaintiff has failed to show that this rose above "routine discomfort," which is insufficient to show a constitutional violation. See *Hudson*, 503 U.S. at 9.

Finally, Plaintiff's allegation that he developed "food sickness" does not show that the conditions of Plaintiff's cell posed a substantial risk of serious harm. Plaintiff does not identify any of the symptoms that he experienced as part of this "food sickness," or give any indication as to the severity of the illness, or on what date or dates, he experienced this "food sickness." Without more information, the allegation that plaintiff developed "food sickness" at an unspecified time while in the cell in question is insufficient to show that Plaintiff suffered a serious harm or that his cell conditions posed a substantial risk of serious harm. Moreover, the only connection between this alleged foodborne illness and the conditions in Plaintiff's cell is Plaintiff's allegation that he

developed "food sickness" at some point after being placed in the cell. Therefore, Plaintiff's allegation that he developed "food sickness" does not support this claim that the conditions in his cell posed a substantial risk of serious harm.

Accordingly, for all of these reasons, Plaintiff has failed to state an Eighth Amendment conditions of confinement claim against Defendants Mitchell, Baker, and Turner, and the Court will dismiss those claims.

**2. Claims Against Defendants Erway and Burgess**

Plaintiff alleges that at an unspecified time, Plaintiff "brought it up"—presumably, "it" being the conditions of his cell—to Defendants Erway and Burgess, and they responded, "Oh well we don't have the money to fix those issues." (Compl., ECF No. 1, PageID.4.)

As an initial matter, Plaintiff does not indicate when he told Defendants Erway and Burgess about the conditions of his cell. Under these circumstances, the facts alleged in Plaintiff's complaint do not show that Defendants Erway and Burgess knew about the conditions of Plaintiff's cell while he was detained there on October 21, 2025, and October 22, 2025. Under these circumstances, because Plaintiff fails to show that Defendants Erway and Burgess knew about the conditions of the cell while Plaintiff was detained there, Plaintiff necessarily fails to show that these Defendants knew of a substantial risk of harm to Plaintiff *during his detention in the cell* and failed to remedy it.

Moreover, even setting this issue aside, Plaintiff's claims against Defendants Erway and Burgess fail for the same reason as the claims against Defendants Mitchell, Baker, and Turner. *See supra* Section II.A.1. As discussed above, Plaintiff's factual allegations in the complaint are insufficient to show that he was incarcerated under conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834. Because Plaintiff has not satisfied the objective prong of the

deliberate indifference test, the response of Defendant Erway and Burgess to Plaintiff's concerns cannot form the basis of an Eighth Amendment conditions of confinement claim.

Accordingly, for all of these reasons, Plaintiff has failed to state an Eighth amendment conditions of confinement claim against Defendants Erway and Burgess.

### B. Fourteenth Amendment Procedural Due Process Clause Claims Regarding Grievance Procedure

Plaintiff alleges that he filed a grievance regarding the conditions of his cell. (Compl., ECF No. 1, PageID.4.) Defendant Bassette denied this grievance because it was "vague" and because "this is a facility wide issue." (*Id.*)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

As relevant to Plaintiff's claims regarding Defendant Bassette's denial of Plaintiff's grievance, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the

grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. Oct. 1, 1999).

Accordingly, Plaintiff has failed to state a Fourteenth Amendment Procedural Due Process Clause claim against Defendant Bassette regarding the denial of his grievance, and the Court will dismiss that claim.

### C. Claims Regarding Placement on Modified Grievance Access

Plaintiff also alleges that he was placed on "modified access," which prohibited him from filing another grievance for 90 days and prevented him from appealing his grievance. (Compl., ECF No. 1, PageID.3.) Plaintiff contends that his placement on modified access grievance status violated the First Amendment and the Fourteenth Amendment Procedural Due Process Clause. (Compl., ECF No. 1, PageID.4.)

As an initial matter, in this action, Plaintiff alleges that he "was placed on modified access," but does not identify who was responsible for this action. (Compl., ECF No. 1, PageID.4.) Because Plaintiff does not identify who was responsible for this action, Plaintiff necessarily does not allege that any of the named Defendants were involved in Plaintiff's placement on modified access. (*See id.*) It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government

officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Because Plaintiff does not attribute any factual allegations regarding his placement on modified access to any particular Defendant, Plaintiff's claims regarding his placement on modified access are subject to dismissal.

Even setting aside Plaintiff's failure to attribute factual allegations to particular defendants regarding his issue, Plaintiff's claims regarding modified access are subject to dismissal for failure to state a claim. The Sixth Circuit has addressed the constitutionality of placing a prisoner on modified access and held that "there is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 443 (6th Cir. 2005).

Further, to the extent that Plaintiff intended to raise a First Amendment claim regarding his placement on modified grievance access, "[a] prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition government for redress of grievances. Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Further, Plaintiff was not wholly denied access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker*, 128 F. App'x at 445–47; *Corsetti v. McGinnis*, 24 F. App'x

238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ SS (eff. Oct. 21, 2024).

Accordingly, Plaintiff's Fourteenth Amendment Procedural Due Process Clause claims will be dismissed for failure to state a claim.

**D. Fourteenth Amendment Equal Protection Clause Claims**

Plaintiff claims that his placement on modified access violated the Equal Protection Clause of the Fourteenth Amendment. (*Id.*) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff alleges that his placement on modified access violated the Fourteenth Amendment Equal Protection Clause when setting forth his claims, Plaintiff fails to allege any *facts* to support his conclusory assertions. Indeed, Plaintiff fails to allege any facts to

suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment Equal Protection Clause claims will be dismissed.

## Conclusion

The Court will deny Plaintiff's "Request of Motion for Guidance," (ECF No. 7). Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: August 28, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge